## Ex Parte HINKLE.

St. Louis Court of Appeals, January 19, 1904.

1. **MUNICIPAL CORPORATIONS:** Dramshop License: Repeal of Ordinance. Where an ordinance provides that no one shall conduct a dramshop in the city without paying license fee, and subsequently another ordinance is enacted which, without altering the provisions of the first, provides regulations which must be complied with, by the applicant for license in order to get it, the second ordinance does not repeal the first.

2. ————: ————: Cities of the Fourth Class. Cities of the fourth class are given power by section 5978, Revised Statutes of 1899, to regulate and to license dramshops, saloons and liquor sellers.

3. ————: ————: Ordinance: License Fee. An ordinance which declares it to be unlawful for any person to engage in certain occupations enumerated, including that of dramshop keeper, without obtaining a license, the fee for which in the case of dramshops is fixed at $1,000 a year or $500 for six months, is not void for uncertainty.

4. ————: ————: Oppressive Ordinance. One thousand dollars a year for saloon license in a city of the fourth class is not so unreasonable a charge that a court would be justified in declaring the ordinance fixing it void because unjust and oppressive.

Habeas Corpus.

PETITIONER REMANDED.

*F. M. Mansfield* for petitioner.

(1) It is now a well-settled rule in this State that where a city ordinance is based upon a general grant of power in the charter, and not a specific grant, the reasonableness of such an ordinance can be inquired into by the courts, and if unreasonable, the ordinance will be declared void. City of Springfield v. Starke, 93 Mo. App. 76, and cases cited. (2) The rule in this State is well settled that although a license granted by a municipal corporation is a mere privilege, it is yet so far within the protection of the law—to that extent equivalent to a contract right—that it can not be abrogated without sufficient and just cause. State v. Baker, 32 Mo. App. 98; Hannibal v. Gaut, 18 Mo. 515; Independence v. Noland, 21 Mo. 394; State v. Hawthorne, 9 Mo. 389; State v. Matthews, 50 Mo. 129; State v. Matthews, 66 Mo. 328; State v. Marrow, 26 Mo. 131; State v. Andrews, 26 Mo. 172; State v. Andrews, 28 Mo. 14.

GOODE, J.—The petitioner Hinkle procured a writ of habeas corpus from one of the judges of this court in vacation, returnable to the October term. He was at that time in the custody of the marshal of the city of Mountain Grove, under a warrant issued by the mayor and ex-officio police judge of that city, for conducting a dramshop and selling intoxicating liquors in less quantities than three gallons without having a license to do so. The writ was granted by consent of the city authorities and, therefore, without an examination of the merits of the petition; and the cause will be disposed of with no inquiry into the propriety of the proceeding as a means of testing the validity of the city ordinances relating to dramshop license. The invalidity of those ordinances is the ground on which the petitioner is averred to be unlawfully restrained of his liberty. Many averments are made in the petition against the right of the city to enact them, or to exact the license fee im-

posed on dramshop keepers, which will be disregarded, for the reason that the parties have filed the following stipulation as embodying the essential facts on which they desire the case to be decided:

"For the purpose of a trial of this cause and in order to save cost of taking depositions, the following facts are agreed upon:

"That the petitioner on the 18th day of April, 1903, duly obtained from the county court of Wright county a license to keep a dramshop at his stand in the town of Mountain Grove, Missouri, for a period of six months from that date; that at the time of his arrest he was keeping a dramshop in the said city of Mountain Grove, under and by authority of his said county license and was selling intoxicating liquors in less quantities than three gallons without having a license as such dramshop keeper from the said city of Mountain Grove. That he had at no time been engaged in the business or avocation of keeping, maintaining or conducting a saloon other than that of his said dramshop. That on the —— day of June, 1903, the petitioner was, by virtue of a warrant issued by the respondent Rose as mayor and acting police judge of said city upon a complaint made by the said John A. Stephens, charging him with unlawfully carrying on and engaging in the business of keeping, maintaining and conducting a saloon in the said city of Mountain Grove on the 8th, 9th, 11th, 12th, 13th and 14th days of May, 1903, without first taking out and having from the said city of Mountain Grove, a license to engage in and carry on said business, contrary to section 2 of an ordinance number——, being an ordinance levying and fixing the amount to be charged as license tax on certain objects and persons, passed and approved April 13th, 1903: and with having on the second day of May, 1903, at the said city of Mountain Grove unlawfully sold intoxicating liquors in less quantities than three gallons without first taking out and having a license from the said city of Mountain Grove as a dram-

shop keeper contrary to section 6 of an ordinance en-
titled 'An ordinance concerning dramshops and sa-
loons, passed and approved April 20, 1903,' a copy of
which complaint so filed against your petitioner is
hereto annexed.   That at the time of issuing and serv-
ice of the writ of habeas corpus herein, the petitioner
was in the custody of the respondent John A. Stephens,
under and by virtue of the warrant issued by the re-
spondent Rose as aforesaid; that he has not been dis-
charged from said arrest, but that he is under arrest
and in the custody of the respondent Stephens, and that
the said complaint and charges were and are still pend-
ing against him.

(Signed)              "F. M. MANSFIELD,
                          "Atty. for Petitioner.
                   "E. A. FARNSWORTH,
                       "Atty. for Respondent."


It appears from the above agreed facts that Hin-
kle was granted a license to keep a dramshop in Moun-
tain Grove by the Wright county court, on April 18,
1903.   He opened a dramshop under said license and
was selling intoxicating liquors as a dramshop keeper
without procuring a license from the city of Mountain
Grove, although there was an ordinance in force, en-
acted on April 13, 1903, requiring such a license and
fixing the fee for it at one thousand dollars a year, or
five hundred dollars for six months.   Another ordi-
nance was enacted April 20, not abolishing the require-
ment of a license or changing the license fee, but pre-
scribing the terms on which a license as a dramshop
keeper could be obtained; namely, on the petition of
the majority of the taxpaying citizens in a city block,
and compliance with other conditions in all respects like
the general statutes of the State on this subject.   Both
the ordinances are before us as exhibits attached to the
pleadings.   It is said in the petitioner's brief that the
one of April 20 repealed the one of April 13; but it cer-

tainly had no such effect. The two ordinances are perfectly consistent; the first provided that no one should conduct a dramshop in the city of Mountain Grove without obtaining a license and paying the license fee; the second, without altering that provision of the first one, simply provided regulations which must be complied with by an applicant for license in order to get it. What Hinkle did was to run a dramshop without procuring, or attempting to procure, a city license and in disregard of both the ordinances. Of course, he was guilty of an offense unless the ordinances are void, and they are said to be void because Mountain Grove, as a city of the fourth class, had no power to pass them. Cities of the fourth class are given power by an express statutory enactment, both to regulate and to license dramshops, saloons and liquor sellers. Sec. 5978, R. S. 1899. It is said the ordinance of April 13 was illegally passed over the mayor's veto; but no showing is made in the stipulated facts on that proposition and we must assume it was legally adopted unless it exceeds the legislative power of the city.

The ordinance is also attacked as uncertain in its provisions and therefore void. We think, on the contrary, that it is quite precise, as it declares it to be unlawful for any person to carry on or engage in the enumerated occupations, including that of dramshop keeper, without obtaining a license, the fee for which in the case of dramshops, is fixed, as stated, at one thousand dollars a year, or five hundred dollars for six months.

The further contention is that it was unjust and oppressive, both as exacting an exorbitant fee, and as discriminating against the petitioner. One thousand dollars a year for city saloon license is not so unreasonable a charge that a court would be justified in declaring the ordinance fixing it void. License fees of that amount are often exacted by cities and the exaction upheld by the courts. Certainly the ordinance does not

discriminate against Hinkle; for he was not mentioned, nor in any manner indicated in it, as it was a general ordinance applicable to all persons who might wish to conduct a saloon in Mountain Grove.

Judging from the petitioner's brief, his counsel must have overlooked the clause of section 5978, R. S. 1899, which allows the mayor and board of aldermen of cities of the fourth class to license and regulate dramshops, saloons and liquor sellers; for the brief points out several clauses of that section as being the only ones which pretended to confer any authority to enact such an ordinance, but omit the clause which expressly confers it. The brief refers to the power given to prohibit the selling of liquors to minors and drunkards; to the clause providing that a license tax shall be regulated by ordinance and no license issued until the amount to be paid for it is paid to the city clerk, and other provisions regulating the issuance of licenses. Those grants of power are argued to be inadequate as authority for the ordinances in question, and likely they are inadequate. But the power to pass the ordinances is not derived from them, but from the other clause directly conferring authority broad enough to support the municipal legislation for violations of which Hinkle is in custody.

It is argued that the statutes dealing with cities of the fourth class do not leave it discretionary with the mayor and aldermen to grant or refuse saloon licenses, which is asserted to be a matter of local option and subject to the will of the voters expressed according to the local option statutes. Granting this argument to be sound, the question comes down to this: Do the ordinances in question prohibit the sale of intoxicating liquors in Mountain Grove or regulate it? They undoubtedly regulate it unless the fee exacted is so onerous as to entirely prohibit the business. We hold the fee was fixed at an amount within the discretion of the

city officials in executing, by legislation, their statutory power to regulate dramshops and liquor selling.

The petitioner is remanded to the custody of the marshal of the city of Mountain Grove. *Bland, P. J.,* and *Reyburn, J.,* concur.